UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIMIRA D.,[1]<br><br>Plaintiff<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]<br><br>Defendant. | Case No. 2:20-cv-07366-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.    PROCEDURAL HISTORY

Plaintiff Chimira D. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States

---

[1]     In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

[2]     Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Magistrate Judge (Dkts. 11, 12) and briefs addressing disputed issues in the case [Dkt. 18 ("Pltf.'s Br.") and Dkt. 21 ("Def.'s Br."), Dkt. 23 ("Reply")].  The matter is now ready for decision.  For the reasons set forth below, the Court finds that this matter should be affirmed.

## II.    ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed applications for benefits on January 3, 2018, alleging disability beginning on July 30, 2017.  [Dkt. 17, Administrative Record ("AR") 145-148, 149-58.]  Plaintiff's applications were denied at the initial level of review and on reconsideration.  [AR 20-30.]  A hearing was held before Administrative Law Judge Melissa Warner ("the ALJ") on November 1, 2019.  [AR 20, 34-63.]

On November 14, 2019, the ALJ issued an unfavorable decision applying the five-step sequential evaluation process for assessing disability.  [AR 20-30]; *see* 20 C.F.R. § 404.1520(b)-(g)(1).  At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date.  [AR 23.]  At step two, the ALJ determined that Plaintiff has the following impairments, which are severe in combination: chronic heart failure (CHF); history of right ankle fracture; obesity; a herniated disc and multilevel lumbar osteoarthritis.  [AR 23.]  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations.  [AR 24]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except her limitations include:

> allowance to change position every 30 minutes for one to two minutes in the immediate vicinity of the work station; occasional climbing stairs, balancing, stooping, kneeling and crouching; no crawling or climbing ladders, ropes and scaffolds; and work that is not fast paced, meaning no work where the pace of work is directed by an assembly line, conveyor belt or similar.

[AR 24.]

At step four, the ALJ determined that Plaintiff, who was 33 years old on the alleged disability onset date, is not able to perform any past relevant work.  [AR 28.]  At step five, the ALJ found that considering Plaintiff's age, which meets the definition of a younger individual, and her education, work experience, and RFC, there are jobs that exist in significant number in the national economy that she can perform.  [AR 29.]  Based on these findings, the ALJ found Plaintiff not disabled through the date of the decision.  [AR 29-30.]

Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  [AR 1-6.]  This action followed.  Plaintiff raises the following issues challenging the ALJ's findings and determination of non-disability:

    1.  The ALJ rejected the more limiting aspects of Dr. Razi's opinion without comment; and

    2.  The ALJ failed to properly evaluate Plaintiff's testimony.

Defendant asserts that the ALJ's decision should be affirmed, or in the alternative, remanded for further development of the record if the Court finds the ALJ erred.

### III.   GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if:  (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  "Substantial evidence … is 'more than a mere scintilla' … [i]t means – and only means – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v.*

*Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citation omitted).

The Court will uphold the Commissioner's decision when "the evidence is susceptible to more than one rational interpretation." *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV.   DISCUSSION

### A. The ALJ Properly Evaluated the Medical Evidence

Plaintiff argues that the ALJ erred in failing to articulate why he rejected the 2019 opinion of her treating physician, David Razi, M.D. [Pltf.'s Br. at 7-11; AR 680.] Plaintiff maintains that, according to Dr. Razi's findings, she is unable to sustain full time work due to her anticipated absenteeism and sitting, standing and walking limitations that the ALJ ignored. (Pltf.'s Br at 8-9.)

#### 1.  David Razi, M.D.

On August 29, 2019, Dr. Razi completed a physical residual functional capacity questionnaire. [AR 680-684.] Dr. Razi opined that Plaintiff was capable of low stress work with limitations. [AR 681-682.] He listed Plaintiff's diagnoses as chronic heart failure, hypertension, pulmonary hypertension, coronary artery disease, polycystic ovaries syndrome (PCOS), degenerative disease, and abdominal pain. [AR 680.] Dr. Razi described Plaintiff's symptoms as difficulty walking, lifting, stopping often to gasp for air, dizzy spells, frequently dropping items, and

muscle spasms.  [AR 680.]  Her symptoms also included having frequent abdominal, back, ankle, and chest pain along with burning ankle, and aching chest pain.  [AR 680.]  Given her symptoms, Dr. Razi opined that Plaintiff could walk 90 minutes a day (at 10-minute intervals), sit between 30– 60 minutes, stand for 20 minutes, and combined she could sit, stand and walk for less than two hours in an eight-hour day.  [AR 680-82.]  Plaintiff would however need to rest for 10–20 minutes at a time during the workday.  [AR 682.]  According to Dr. Razi, Plaintiff can rarely lift up to 10 pounds.  [AR 682.]  She can rarely look down, turn her head or look up, and she can occasionally hold her head in a static position.  Based on the totality of her symptoms, Dr. Razi anticipated that Plaintiff would be absent from work three or more days per month.  [AR 683.]

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The new regulations provide the ALJ will no longer "give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings.  *See* 20 C.F.R. § 404.1520c(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Agency's] disability program's

1  policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

2  Supportability and consistency are the most important factors, and therefore,

3  the ALJ is required to explain how both factors were considered.[3] *See* 20 C.F.R. §

4  404.1520c(b)(2). The ALJ may, but is not required to, explain how factors such as

5  the "[r]elationship with the claimant," "[s]pecialization," and "other factors that tend

6  to support or contradict a medical opinion or prior administrative medical finding,"

7  were considered. 20 C.F.R. § 404.1520c(b)(2).

8  Here, the ALJ found that Dr. Razi's assessment of Plaintiff's functional

9  limitations "not persuasive." [AR 27.] Specifically, the ALJ discounted Dr. Razi's

10  opinion as overly restrictive, excessive, and not well supported by the treatment

11  record. [AR 27.] Substantial evidence supports that determination. In considering

12  Dr. Razi's opinion, the ALJ noted that several limitations assessed by Dr. Razi were

13  "not supported by the record." [AR 27.] That determination was made on the basis

14  that Dr. Razi's had very few underlying treatment records supporting his extreme

15  limitations. Indeed, despite his assertion of having treated Plaintiff from August

16  2017 through August 2019, the record contained only nine pages of evidence

17  _____

18

19  [3]  Supportability and consistency are explained in the regulations as

20  follows:

21  (1) Supportability. The more relevant the objective
medical evidence and supporting explanations presented

22  by a medical source are to support his or her medical

23  opinion(s) or prior administrative medical finding(s), the
more persuasive the medical opinions or prior

24  administrative medical finding(s) will be.

25  (2) Consistency. The more consistent a medical
opinion(s) or prior administrative medical finding(s) is

26  with the evidence from other medical sources and

27  nonmedical sources in the claim, the more persuasive the
medical opinion(s) or prior administrative finding(s) will

28  be.
20 C.F.R. § 404.1520c(c)(1)-(2).

submitted from West Century Medical Center where Dr. Razi practiced.[4] [AR 797-805.]  The evidence submitted included referrals from Dr. Razi to other providers (AR 798-805), and an August 26, 2019, prescription for primarily vitamins and supplements.  [AR 797.]  Otherwise, there were no progress notes or objective clinical findings submitted by Dr. Razi.   Recognizing this, the ALJ properly opined that there was no clear basis supporting the extreme limitations opined by Dr. Razi.

The ALJ also disregarded Dr. Razi's opinion regarding Plaintiff's neck and arm limitations.  [AR 27.]  With respect to Plaintiff's neck, Dr. Razi opined Plaintiff could "rarely" look down, turn her head to the right or left, or look up; and she could only "occasionally" hold her head in a static position.  [AR 683.]  However, as the ALJ remarked, the record contains very little support for Plaintiff's neck related complaints.  [AR 27.]  In September 2018, Dr. Reekesh Patel ordered an MRI for neck pain with pain radiating down the left arm, but as Plaintiff concedes, the record "does not contain the MRI results for the lumbar or cervical spine." (Reply at 4; AR 791).  Further, throughout the record, upon examination, Plaintiff's neck persistently exhibited a normal range of motion and was described as supple.  [See AR 241, 245, 288, 294, 298, 302, 310, 319, 326, 333, 340, 348, 353, 356, 359, 366, 371, 407, 664, 666, 688, 695, 701, 709, 728.]  Thus, other than the isolated reference to the 2018 neck MRI and Dr. Razi's unsupported opinion, there is nothing in the record to suggest that Plaintiff underwent treatment for neck pain or that she had difficulty moving her neck.  Rather, the majority of Plaintiff's spine related MRI's and treatment records related to her lower back pain.  [AR 767, 781, 785, 787, 789, 793.]

Next, Dr. Razi opined that Plaintiff could handle or finger with her left arm during no more than 40% of the workday, and with her right for no more than 60%.

---

[4]     Although in his a physical residual functional capacity questionnaire Dr. Razi stated that he had been treating Plaintiff since 2017, Plaintiff testified at the hearing that she had been treating with "Dr. Rossi" [sic] "for ten years or so."  [AR 47-48.]

1   [AR 683.]  Yet, as the ALJ observed, the record contained limited references to

2   Plaintiff's complaints of hand pain and no significant hand restrictions during any

3   related physical examination other than occasional swelling in the fingers.  [AR 28

4   citing AR 753-96.]

5           In response, Plaintiff gives little attention to the ALJ's finding that the

6   medical evidence does not support Dr. Razi's "exertional, postural, and additional

7   sit/stand and elevating restrictions." [AR 27.]   Instead, Plaintiff argues that the lack

8   of supporting evidence (like "x-ray findings and the electrodiagnostic findings") is

9   not a basis for disregarding Dr. Razi's opinion that Plaintiff is unable to perform

10  full-time work.  (Reply at 4.)  Rather, Plaintiff argues that the ALJ should have

11  ignored Dr. Razi's unsupported ancillary findings related to Plaintiff's hand and

12  neck limitations and instead focused on Dr. Razi's findings related to her cardiac

13  and lumbar impairments.  (Reply at 5.)

14          But the ALJ was entitled to find Dr. Razi's overall opinion unpersuasive in

15  light of its many unsupported conclusions.  It is a long-standing principle that an

16  ALJ may properly discount an opinion by a treating physician that is not supported

17  by the medical record—including their own treatment notes.  *See Valentine v.*

18  *Commissioner Social Sec. Admin.*, 574 F.3d 685, 692-93  (9th Cir. 2009)

19  (contradiction between physician's opinion and his treatment notes constitutes

20  specific and legitimate reason for rejecting opinion); *Johnson v. Shalala*, 60 F.3d

21  1428, 1433 (9th Cir. 1995) (ALJ properly rejected medical opinion where doctor's

22  opinion was contradicted by his own contemporaneous findings); *Khounesavatdy v.*

23  *Astrue*, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is

24  appropriate for an ALJ to consider the absence of supporting findings, and the

25  inconsistency of conclusions with the physician's own findings, in rejecting a

26  physician's opinion.").  There is nothing in the record to indicate what Dr. Razi

27  relied on when formulating his opinion.  The ALJ therefore reasonably concluded

28  that there was nothing to warrant the degree of limitations assessed by Dr. Razi.

1    The other evidence in the record also reasonably supports the ALJ's

2    conclusion that Dr. Razi's findings were otherwise "excessive."  *See Morgan v.*

3    *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (reasoning an

4    ALJ may reject a medical opinion that is inconsistent with other evidence of record,

5    such as a claimant's statements and admissions).  For example, while Dr. Razi

6    opined Plaintiff required a cane for ambulation (AR 682), this was the only

7    reference to use of such a device anywhere in the record.  In fact, Plaintiff denied

8    requiring any assistive device for ambulation.  [AR 196.]  Similarly, while 2017

9    records contained two references to Plaintiff's need to elevate her legs in response to

10   lower extremity edema (AR 291, 309), throughout the relevant period, Plaintiff

11   generally exhibited no edema and no other PAMF or physician recommended

12   additional treatment with leg elevation.  [See AR 241, 245, 262, 263, 264, 298, 302,

13   319, 323, 329, 335, 336, 340, 344, 353, 366, 374, 379, 384, 389, 401, 407, 409, 415,

14   419, 423, 431, 644, 666, 688, 695, 701, 704, 709, 717, 722, 729.]

15   Given the lack of underlying support in the record including Dr. Razi's own

16   treatment notes, the ALJ properly found considered the persuasiveness of Dr. Razi's

17   opinion, including consideration of its supportability and consistency with the

18   evidence of record.  *See* 20 C.F.R. § 404.1520c(b)(2).  Remand is not warranted on

19   this issue.

20   **B.    The ALJ's Credibility Determination is Supported by at Least One Clear**

21   **and Convincing Reason**

22   Next, Plaintiff contends the ALJ failed to provide sufficient reasons for

23   rejecting her subjective symptom testimony.  [Pltf.'s Br. at 12-14.]  Specifically,

24   Plaintiff asserts that the ALJ failed to provide any legally sufficient reasons to reject

25   her testimony beyond inconsistency with the objective medical evidence.  (Pltf.'s

26   Br. at 12-13.)  The Court disagrees.

27   In evaluating a claimant's subjective symptom testimony, an ALJ must

28   engage in a two-step analysis.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36

9

1    (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

2    objective medical evidence of an underlying impairment which "could reasonably

3    be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Bunnell*

4    *v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  And second, if the

5    claimant meets the first test and there is no evidence of malingering, the ALJ can

6    only reject the claimant's testimony about the severity of the symptoms if she gives

7    "specific, clear and convincing reasons" for the rejection.  *Smolen v. Chater*, 80 F.3d

8    1273, 1281 (9th Cir. 1996)).  "At the same time, the ALJ is not required to believe

9    every allegation of [symptoms], or else disability benefits would be available for the

10   asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina*, 674 F.3d at

11   1112 (citation and internal quotations omitted).

12        Because there is no allegation of malingering and the ALJ found that

13   "claimant's medically determinable impairments could reasonably be expected to

14   cause the alleged symptoms," the ALJ's reasons must be clear and convincing.

15   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  [AR 25].  Even if "the

16   ALJ provided one or more invalid reasons for disbelieving a claimant's testimony,"

17   if he "also provided valid reasons that were supported by the record," the ALJ's

18   error "is harmless so long as there remains substantial evidence supporting the

19   ALJ's decision and the error does not negate the validity of the ALJ's ultimate

20   conclusion."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal

21   quotation omitted).

22        At the outset, the Court notes that contrary to Plaintiff's assertion, the ALJ

23   provided additional reasons beyond inconsistency with the objective medical

24   evidence when finding Plaintiff's subjective complaints were not fully credible.

25   Although the ALJ could have set out her reasoning more distinctly in her opinion,

26   ALJs need not organize their decisions in any particular way so long as the

27   reviewing Court can understand their reasoning.  *See Glenn v. Comm'r of SSA*, No.

28   CV-16-04268, 2017 U.S. Dist. LEXIS 161949, 2017 WL 4349394, at *3 (D. Ariz.

1   Oct. 2, 2017) ("Although the ALJ's opinion could have been organized more clearly

2   to highlight its specific reasons, they are identified in the decision.").  Here, the ALJ

3   clearly noted three reasons to reject Plaintiff's credibility: (1) Plaintiff's treatment

4   history indicated that she declined to engage in many recommended treatments or

5   follow-ups with a specialist; (2) Plaintiff's symptoms improved with treatment; and

6   (3) there were inconsistencies between the objective medical evidence and

7   Plaintiff's allegations of disabling limitations.  [AR 25-28.]

8        First, in considering Plaintiff's subjective complaints about her disabling

9   limitations, the ALJ cited several portions of the medical record demonstrating that

10  Plaintiff did not always follow treatment recommendations and she overall failed to

11  seek treatment consistent with her alleged complaints.  [AR 26-27.]  The ALJ noted

12  that Plaintiff claimed that she is unable to work due to chest pain, back spasms,

13  tendonitis in her ankle, and shortness of breath.  [AR 25.]  But the ALJ found that

14  these subjective complaints were incompatible with her failure to follow treatment

15  recommendations that could resolve these symptoms.  This reason was clear and

16  convincing.

17       For example, the ALJ noted that, over several occasions, Plaintiff rejected or

18  declined to follow prescribed or recommended treatment protocols.  As the ALJ

19  observed, when Plaintiff presented to the emergency room for sinus tachycardia and

20  pneumonia in July 2017, she reported that she "was prescribed anti-hypertensive

21  [medication] in the past, but she chose not to take it."  [AR 26, 353.]  The following

22  month, on August 14, 2017, Plaintiff returned to emergency room for cramping and

23  vaginal bleeding, and she declined "recommended catherization" because she was

24  [approximately 7 weeks] pregnant at the time.  [AR 26, 239.]  Plaintiff was

25  discharged with a likely miscarriage and instructed to follow-up with her OBGYN.

26  [AR 244.]  Following her miscarriage, Plaintiff became pregnant again and returned

27  to the emergency room on July 17, 2018, due to vaginal bleeding.  [AR 724-749.]

28  She reported having a history of hypertension, but she was not taking her

1   medications "because she did not know if it was safe in pregnancy."  [AR 731.]

2   With respect to Plaintiff's back and ankle pain, the ALJ noted that pain

3   management records demonstrated that Plaintiff declined recommended physical

4   therapy and epidural injections.  [AR 26.]  Specifically, the record indicates that

5   Plaintiff's musculoskeletal conditions were treated with pain medication, and other

6   medications, as well as acupuncture.  [AR 756-57, 768-69, 771, 782, 794.]

7   However, Plaintiff's providers also recommended other treatment methods that

8   Plaintiff either declined or unilaterally terminated.  [AR 26-27; *see*, e.g., AR 791

9   (noting that Plaintiff "would benefit from therapy as she does not want to do

10  injections," but "has not started therapy"); AR 757, 774 (recommending injection

11  therapy); AR 759 ("cont acupuncture - stopped due to schedule".]  Although there is

12  some evidence that Plaintiff participated in physical therapy for her ankle beginning

13  in March 2019, and that this treatment was effective (AR 27, see AR 757), no

14  physical therapy treatment notes were submitted to the record.  Additionally, in

15  January 2019, Plaintiff was referred for a neurosurgery consultation.  [AR 782.]

16  Notably, however, the record does not show that Plaintiff followed up with that

17  referral.

18  Noncompliance with prescribed treatment is a proper basis to discount

19  credibility.  *See* 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow

20  treatment prescribed by your medical source"); *Tommasetti v. Astrue*, 533 F.3d

21  1035, 1039 (9th Cir. 1008) (failure to follow a prescribed course of treatment is a

22  valid reason for discounting subjective symptom allegations).  Substantial evidence

23  supports the ALJ's finding in this respect.

24  Second, as the ALJ noted, Plaintiff's treatment was irregular and relatively

25  routine. [AR 27.]  An ALJ may properly discount a claimant's subjective symptom

26  statements when the course of treatment is relatively conservative, noninvasive,

27  infrequent, or irregular.  *See Centanni v. Berryhill*, 729 F. App'x 560, 562 (9th Cir.

28  2018); *Jones v. Berryhill*, 720 F. App'x 851, 852 (9th Cir. 2017); *Woodmass v.*

*Berryhill*, 707 F. App'x 432, 435 (9th Cir. 2017).  Indeed, "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."  SSR 16-3p, 2016 SSR LEXIS 4 at *23, 2017 WL 5180304, at *9.

Here, the ALJ noted that although Plaintiff suffered from documented chronic heart failure, the persistent treatment of her symptoms was not supported by the record.  Specifically, following Plaintiff's initial cardiac event in 2017, she only had one emergency room visit and routine cardiovascular follow-ups.  [AR 27.]  The record additionally reflected that when Plaintiff was compliant with her hypertension and diuretic medications, her heart symptoms were controlled and required only routine follow-up care.  [AR 26; see, e.g., AR 663 (suggesting Plaintiff's cardiomyopathy was related to her untreated hypertension, for which Plaintiff declined to take her medication as prescribed); AR 297 (reporting Plaintiff's symptoms of CHF, were "likely due to Lasix [diuretic] noncompliance"); (AR 694, 695, 701 (noting Plaintiff as hemodynamically "stable," during her routine follow-ups)).  Plaintiff also received largely "routine medication management for her back and ankle pain."  [AR 27.]  She persistently reported "being able to function well while taking current pain medications," with no reported side effects. [AR 755, 758, 761, 764, 767, 773, 775, 777, 779, 781, 783, 785, 793]. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Given the above, the Court need not address whether the ALJ's treatment of the objective medical evidence was a valid reason to reject Plaintiff's credibility because even assuming that it was not, any error was harmless in light of the other legally sufficient reasons for the ALJ's determination.  *Batson v. Comm'r of Soc.*

13

*Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where ALJ provided other valid bases for credibility determination).

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. *See Smolen*, 80 F.3d at 1284. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. The above reasons constitute clear and convincing reasons for discounting Plaintiff's testimony regarding her symptoms and functionality.

Accordingly, reversal is not warranted based on the ALJ's consideration of Plaintiff's testimony regarding the nature and severity of her symptoms.

## V.   CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS ORDERED.**

DATED:  May 31, 2022

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

14